IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**TRAVIS PARKS**                                                                 **PETITIONER**

v.                               No. 4:24-cv-00069-JM-JTK

**DEXTER PAYNE, Director,**                                               **RESPONDENT**
**Arkansas Division of Correction**

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Moody may adopt this Recommendation without independently reviewing the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

*

Travis Parks seeks *habeas* relief from his convictions and sentences entered by the Polk County Circuit Court. The jury found Parks guilty of internet stalking of a child and possession or use of computer child pornography. He was sentenced to consecutive terms of twenty years' imprisonment. The Arkansas Court of Appeals affirmed. *Parks v. State,* 2022 Ark. App. 437, 655 S.W.3d 98, petition for review denied by CR-21-576 (Ark. Jan. 26, 2023). Parks timely filed his *pro se* habeas petition, challenging the trial court's evidentiary rulings. *Doc. 1.* The undersigned recommends that the petition be dismissed.

*

The Arkansas Court of Appeals accurately summarized the underlying facts:

At the trial, the following evidence was adduced. As a part of an undercover investigation, Officer [Jacob] Cain created a false profile on MeetMe for Amber, an eighteen-year-old girl. Around 12:00 p.m. on December 21, Baph, whose profile photo was that of a "satanic goat figure," messaged Amber. Amber immediately told Baph that her real age was fourteen, not eighteen, and Baph told her that he was "look[ing] for fun and willing girls to participate in certain satanic activities" and that he was interested in "satanic sexual rituals." Baph requested nude photos, which Amber refused to send. They discussed having sex in various ways, and Amber requested that Baph use condoms to prevent pregnancy. Baph informed Amber that he would be driving a small white car, and it would take about an hour and a half for him to get to the agreed meeting place, the Dollar General in Mena. They agreed to meet at 2:00 a.m. that morning. Baph messaged Amber several times along his journey to Mena, and at 2:00 a.m. he sent her a message that he had arrived at Dollar General. At that time, Officer Cain, who was parked across the street, saw a small white car enter the parking lot of Dollar General. The car circled the lot, and about a minute later, Officer Cain stopped the vehicle. Officer Cain arrested Baph who was later identified as Parks, and he seized a cell phone that displayed a message from Amber. During a pat-down search at the station, Officer Cain found two condoms in Parks's pocket.

Parks testified in his defense. He explained that he used the MeetMe app to contact Amber whom he believed to be eighteen years old. Parks testified that the screenshotted messages between them in evidence, including references to satanic activity and requesting nude photographs, were accurate; however, he explained that he did not practice Satanism, and no satanic paraphernalia was found in his car when he was arrested. He testified that he only referred to satanic activity to get the attention of other app users. Parks stated that as he was on his way to Dollar General, he messaged Amber to inform her of his progress. Parks recalled that he was approximately one minute away from Dollar General when he sent the message that he was there, and he entered the parking lot shortly after the message was sent. He stated that if he had seen anyone in the parking lot, he would have "done the same thing I did, just made a loop to try to turn around and go home" and that by the time he arrived at the meeting place, he was disgusted with himself and "just wanted to turn around and go home." Parks explained he would not have stopped the car in the parking lot and did not stop until he was pulled over. Parks testified that he chose the profile name Baph as a reference to Baphomet, a satanic figure, but that he did not know much about the name or its origin.

*Parks,* 2022 Ark. App. 437, *6–7, 655 S.W.3d at 102–03.

*

Before trial, Parks sought to suppress his cell phone and its messages found in his vehicle and condoms found in his pocket during booking at the jail. Parks argued that, because the stop

2

was illegal, the evidence should be suppressed as fruit of the poisonous tree. He also argued his statements made to Officer Cain after the stop should be suppressed because he was not read his *Miranda* rights. He contended his subsequent statements after his arrest should be suppressed because he was intoxicated. *Doc. 4-3 at 40 45.* Parks also filed a motion in limine, asking the trial court to exclude from evidence his statements about "Satanic activities" or "Satanic sex rituals" and photographs relating to Satanism. *Doc 4-3 at 42.*

The Arkansas Court of Appeals summarized Officer Cain's suppression hearing testimony and the contents of the dash-cam video:

> At the motion hearing, Officer Jacob Cain, formerly with the Mena Police Department, testified that pursuant to an undercover investigation, he created a false account on the social media/dating website app MeetMe. Officer Cain's false profile was that of an eighteen-year-old girl named "Amber," and he posted photos of a fifteen-year-old-girl to the account.[1] On December 21, a person claiming to be a twenty-seven-year-old man named "Baph" contacted Amber through MeetMe, and they began a conversation. Baph's profile photo was that of a red-skinned, goat-headed person in front of a red background. Officer Cain testified that, as Amber, he informed Baph that he was fourteen years old—not eighteen as his profile indicated. During their conversation, Baph stated that he was looking for "fun and willing girls to participate in certain satanic activities" and sex rituals. Baph requested that Amber send him nude photographs, which Amber refused to do. Amber requested that Baph use condoms during their sexual encounter, which Baph explained would be difficult due to his large size. Eventually, Amber agreed to meet with Baph to engage in sexual activity. Baph suggested they meet at the Dollar General in Mena near Amber's fictional home address, and they set the meeting time for 2:00 a.m. Baph stated that he would be driving a small white car and messaged Amber several times along his route to Mena. At 2:00 a.m., Officer Cain received a message from Baph that he had arrived at Dollar General. Within moments, Officer Cain (who was parked across the street in an empty parking lot) saw a small white car enter and drive slowly through the Dollar General parking lot. There were no other cars around. Officer Cain testified that he turned on his blue lights and conducted a stop. He told Parks to exit the car and put his hands on the back of the car. The dash-cam video played during the hearing showed Officer Cain telling Parks to exit the car and put his hands on the back of the car. Parks was handcuffed, and Officer Cain asked, "What are you doing, man? What are you doing down here?" Parks answered that he was "just driving around," and the following exchange occurred:
>
> Office Cain: Where you comin' from?

3

Mr. Parks: Alma.

Officer Cain: Alma?

Mr. Parks: Uh-huh.

Officer Cain: Okay. What's your name?

Mr. Parks: Travis.

Officer Cain: Travis?

Mr. Parks: Parks.

Officer Cain: Travis Parks. Okay. Allright. Just driving around, huh?

Mr. Parks: Yes, sir.

Officer Cain: That's your story?

Mr. Parks: Well, I was supposed to meet a girl.

Officer Cain: What's her name?

Mr. Parks: Uh, Ashley or Amber, something like that.

Officer Cain: Okay. All right. How old is Amber?

Mr. Parks: Eighteen.

Officer Cain: Okay. All right. Alrighty. You're under arrest for internet stalking of a child.

Mr. Parks: She's eighteen on the Meet Me.

Officer Cain: Okay. We'll talk about it.

Office Cain testified that he conducted a pat-down search of Parks and retrieved a mostly full bottle of alcohol. During the search of Parks's car, Officer Cain found and took photographs of a cell phone. Later, during a pat-down search at the police station, Officer Cain found two Trojan Magnum condoms in Parks's pocket. Officer Cain testified that at the police station, he read Parks his *Miranda* warning and interviewed him. At 3:56 a.m. Officer Cain questioned Parks about his references to satanic acts, rituals, and his profile picture that depicted a goat-

4

headed, red-skinned figure. Parks stated that the Baph profile was his and that he had messaged Amber as Baph.

*Parks,* 2022 Ark. App. 437, *2–4, 655 S.W.3d at 101–02.

The trial court found there was reasonable suspicion warranting the investigative stop of Parks's vehicle and that there was probable cause for the arrest. The trial court suppressed the seized alcohol bottle, finding no evidence of dangerousness to support the pat-down search at the scene. The court denied the suppression motion as to the two condoms found in Parks's pocket during booking at the jail after he was arrested. The trial court suppressed the pre-*Miranda* statements recorded on the dash cam but found there was no hearing evidence supporting Parks's claim of intoxication. The court denied the suppression motion as to Parks's statements made after the *Miranda* warnings were read to him at the police station. The court denied the motion to suppress as to Parks's cell phone, finding Officer Cain had the right to search Parks's vehicle incident to his arrest and seize the phone, which was in plain view and connected to the offense. The court denied the motion in limine seeking to exclude testimony and exhibits related to Satanic activities and sex rituals. The trial court determined that the evidence was relevant to establishing the elements of the charged offenses and that it did not create a danger of unfair prejudice. *Doc. 4-3 at 59, 65, 66, 67.* The Arkansas Court of Appeals affirmed the evidentiary rulings to the extent Parks challenged them on appeal. *Parks,* 2022 Ark. App. 437, 655 S.W.3d 98.

\*

Parks, a state prisoner, may seek a writ of *habeas corpus* in federal court, if he is "in custody in violation of the Constitution or laws or treatises of the United States." 28 U.S.C. § 2254(a). Before seeking *habeas* review, Parks must have exhausted available state remedies by fairly presenting each of his claims in state court. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). "[S]tate prisoners must give the state courts one

full opportunity to resolve any constitutional issues by involving one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 845.

On claims adjudicated on the merits, this Court may grant *habeas* relief only if Parks satisfies 28 U.S.C. § 2254(d) requirements and United States Supreme Court "precedents governing the appropriate exercise of equitable discretion." *Brown v. Davenport*, 596 U.S. 118, 134 (2022). Parks must demonstrate that the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Parks also must pass the *Brecht* test for assessing the state court error's prejudicial effect. *Brown*, 596 U.S. at 134. He must show the error had "substantial and injurious effect or influence" on the verdict or sentence. *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993) (quotations omitted).

A claim is procedurally defaulted when the state court declined to review it because the petitioner failed to comply with a state procedural rule. *Coleman,* 501 U.S. at 729–32. Procedural default also occurs when a petitioner did not present a claim in state court and a remedy there is no longer available. *O'Sullivan*, 526 U.S. at 847–48. If a claim is procedurally defaulted, this Court can consider it only if Parks establishes either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

\*

Raising a Fourth Amendment violation, Parks summarily challenges the seizure of his cell phone and its contents during the traffic stop at the Dollar General and the discovery of two condoms in his pocket during jail booking. He seems to be repeating his direct-appeal argument

that the searches and seizures were made in connection with an illegal stop. The exhausted claim is reviewed with deference to the state court decision. 28 U.S.C. § 2254(d).

Applying state and federal law, the Arkansas Court of Appeals determined Officer Cain had reasonable suspicion to justify the stop:

> . . . Officer Cain had specific, particularized, and articulable reasons for conducting the stop. Parks told Officer Cain that he would be driving a small white car and messaged Officer Cain several times on his way to the meeting place, keeping him aware of his progress. At approximately 2:00 a.m., the ascribed meeting time, Parks sent a message to Officer Cain stating that he had arrived. Immediately thereafter, a small white car pulled into the parking lot of Dollar General, the designated meeting place; thus, Officer Cain relied on more than bare suspicion in deciding to make the investigatory stop and had minimal, objective justification to conduct the stop. Considering the totality of the circumstances, the above facts gave rise to reasonable suspicion or probable cause, and the circuit court did not err in denying the motion to suppress the evidence gather pursuant to the stop.

*Id.*

A Fourth Amendment claim of an unconstitutional search or seizure is cognizable on *habeas* review only if the state did not provide "an opportunity for full and fair litigation of [the] claim." *Stone v. Powell,* 428 U.S. 465, 494–95 (1976). The Eighth Circuit Court of Appeals has adopted a two-part test for determining whether a petitioner had an opportunity for full and fair litigation in state court: The claim is *Stone*-barred and unreviewable "unless either the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." *Willett v. Lockhart,* 37 F.3d 1265, 1273 (8th Cir. 1994) (*en banc*). Parks does not dispute that his claim was reviewed and decided by the Arkansas Court of Appeals. *Doc. 1 at 5*. Because Parks had an opportunity for the full and fair adjudication of his Fourth Amendment claim in state court, *habeas* review is not available. The undersigned therefore concludes the claim should be denied.

\*

Parks next summarily states that, before he was *Mirandized,* he "admitted to chatting with the surveilled online profile." *Doc. 1 at 7.* Because the trial court excluded from evidence Parks's pre-*Mirandized* statements recorded on the dash cam, *Doc. 4-3 at 59, 65, 66, 67,* the undersigned recommends that the claim be denied as meritless. 28 U.S.C. § 2254(b)(2).

The statement that Parks made at the police station after he was *Mirandized* was admitted into evidence. *Doc. 4-3 at 59, 65, 66, 67.* To the extent Parks is arguing, as he did on direct appeal, that his pre-*Mirandized* statement tainted his *Mirandized* statement made at the police station, the claim must be reviewed with deference to the state court decision.

The Arkansas Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established federal law; nor was it an unreasonable determination of the facts. 28 U.S.C. § 2254(d). "[A]bsent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion" of the subsequent statement. *Oregon v. Elstad,* 470 U.S. 298, 314 (1985). "A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." *Id.* Because Parks has not developed any convincing argument that Officer Cain used coercion in connection with his first statement, the undersigned finds the Arkansas Court of Appeals "reasonably conclude[d] that [Parks] made a rational and intelligent choice whether to waive or invoke his rights." *Id.* The claim alternatively should be dismissed under deference review.

\*

Parks also summarily states that, in violation of the Sixth and Fourteenth Amendments, the trial court admitted "prejudicial references" to Satanism. *Doc. 1 at 8–9.* He admits that he challenged the admission of the evidence in state court based only on state law grounds and that the claim is therefore procedurally defaulted. *Id.* He argues cause exists to excuse procedural default because his trial lawyer failed to raise a federal claim. *Id.*

To avoid procedural default, Parks must have fairly presented in state court "the same facts and legal theories" that he presents in federal court on *habeas* review. *Morris v. Norris,* 83 F.3d 268, 270 (8th Cir. 1996). Parks's argued in his motion in limine before trial that the Satanism evidence should be excluded based on Rule 403 of the Arkansas Rules of Evidence. *Doc. 4-3 at 42. See* Ark. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). On direct appeal, Parks repeated the argument that the state evidentiary rule required exclusion of the Satanism evidence. *Doc. 4-4 at 17–21.* The Arkansas Court of Appeals affirmed:

> The circuit court admitted the evidence regarding Parks's references to satanic activity and his profile picture for the purpose of showing Parks's state of mind, intent, plan, preparation, and opportunity to solicit, lure or entice a meeting under Ark. Code Ann. § 5-27-306. Also, the court found that the evidence was relevant to prove Parks's identity as Baph. At trial, Parks testified that the purpose of choosing Baph as his profile identity and referring to satanic activity was to get the attention of other app users, to stand out among the other profiles, and to seem "cool"; thus, Parks's references to satanic activity, under the facts of this case, are probative of his intent and plan to solicit Amber and lure and entice her, which are elements of the crime of internet stalking of a child. Additionally, evidence of Parks's use of the profile name Baph was relevant to prove his identity. "A key element that must be proved in every case is that the defendant is the person who committed the crime." *Turner v. State*, 2018 Ark. App. 5, at 15, 538 S.W.3d 227, 238. The references to Baph and the profile picture of the satanic figure were relevant to show that Parks was Baph and that he committed the crimes of internet stalking of a child and computer child pornography. Accordingly, the circuit court did not abuse its discretion by finding that the probative value of the references to

9

satanic activity was not substantially outweighed by any potential prejudice and admitting the evidence.

*Parks,* 2022 Ark. App. 437, *15–16, 655 S.W.3d at 107.

"Even if state law bears some relation to federal constitutional requirements, habeas petitioners must have explicitly cited to the United States Constitution or federal case law in their direct appeal to preserve federal review." *Morris,* 83 F.3d at 270 (quotations omitted). Because Parks, as he admits, did not raise a federal constitutional issue in state court, the undersigned concludes that the claim is procedurally defaulted.

To establish cause for the default, Parks must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). Constitutionally ineffective assistance of counsel is an example of cause to excuse procedural default. *Id.* Parks, however, makes no argument that his trial lawyer's decision—to challenge the admissibility of the Satanic references only on state law grounds—rose to the level of constitutional ineffectiveness under the familiar *Strickland v. Washington* standard. The undersigned therefore concludes that the claim should be denied based on procedural default. The claim alternatively should be dismissed on the merits because Parks has not developed any argument demonstrating a constitutional violation. 28 U.S.C. § 2254(b)(2).

\*

IT IS THEREFORE RECOMMENDED THAT: (1) Parks's petition be DISMISSED with prejudice, *Doc. 1*; and (2) a certificate of appealability be DENIED.

DATED THIS 22nd day of April, 2025.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE